KATHERINE SNEVE v. FIRST NATIONAL BANK & TRUST COMPANY OF MINNEAPOLIS.[1]

No. 30,013.

September 7, 1934.

*Ira C. Oehler,* for appellant.
*Stinchfield, Mackall, Crounse, McNally & Moore,* for respondent.

*HOLT, Justice.*

The appeal is from an order striking out certain paragraphs of the complaint as irrelevant and immaterial.

To determine whether the stricken part is irrelevant or immaterial to plaintiff's cause of action it is necessary to give a brief outline of the other allegations of the complaint. It is alleged that in October, 1925, plaintiff purchased two $1,000 promissory notes of a series of such notes aggregating $85,000 and dated June 1, 1925. The

[1]Reported in 256 N. W. 730.

notes were executed by one Lifson and secured by a trust deed or mortgage of certain real estate in the city of St. Paul. Defendant was one of two trustees named in the trust deed; the other resigned as such prior to March 1, 1930. Payment of the notes and interest was guaranteed by two surety companies. In 1928 the maker of the notes defaulted, the default continued until March 1, 1930, on which date defendant, in accordance with the terms of the trust deed, declared the entire debt due and payable and proceeded to foreclose, bidding in the property conveyed by the trust deed at the sale held May 10, 1930, for $105,131.57, the then full indebtedness upon said series of notes. It is alleged that defendant did not advise plaintiff of the default of the maker of the notes, nor of its action in declaring the whole debt due, nor of the foreclosure and the bidding in of the property for the full amount of the debt; that plaintiff, without any knowledge thereof up until December 1, 1932, continued to receive from defendant, on regular interest days, the stipulated interest on the notes. It is also alleged that the guarantors were solvent and could have responded to their guaranty up to May 10, 1930, and for some time thereafter, but are now (1933) insolvent; and, on information and belief, it is alleged that the foreclosure was instigated by one or both of the guarantors, that attorneys paid by them conducted the same, and that defendant permitted some persons to plaintiff unknown to pay the interest on the notes due from June 1, 1930, to December 1, 1932. In the above recited acts defendant is charged with gross negligence to plaintiff's damage in the sum of $2,060.

The four paragraphs of the complaint that were stricken charged defendant with failure to take possession of the property foreclosed for the benefit of plaintiff and of the other beneficiaries of the trust, and alleged that it has permitted persons to plaintiff unknown to possess, use, and enjoy the same for more than two years without paying therefor.

With the four paragraphs stricken the complaint states no cause of action. Of course the foreclosure sale for the full amount of the debt paid plaintiff's notes and discharged the guarantors. But if the property was worth the amount for which it was bid in by de-

fendant, plaintiff was not damaged by any acts of commission or omission of defendant prior to the sale. Plaintiff has received her interest up to December 1, 1932, so she has not been damaged except subsequent thereto, for there is no allegation that her share in the income from the property exceeded the interest received subsequent to the expiration of the time of redemption. After that date defendant, holding the property in trust for the note holders, was in duty bound to take possession and manage it for the beneficiaries of the trust. We notice that the stricken paragraphs are somewhat lame in not alleging what the value of the use of the property was, but the description indicates an apartment building in the city of St. Paul was located thereon, and the trust deed required Lifson to keep the buildings insured against loss from fire in the sum of $100,000. It would seem to follow that failure to take possession and secure an income from this property subsequent to December 1, 1932, would constitute some damage to the beneficiaries of the trust.

We do not think the facts alleged in the parts of the complaint not stricken state a cause of action. As above stated, there is no allegation that the property is worth less than it was bid in for. There can be no doubt that defendant holds it in trust for the note holders. It is very questionable whether, in that situation, plaintiff can claim damage or loss because of the discharge of the guarantors, or that defendant was charged with the duty to enforce the guaranty. No reference to any guaranty is contained in the trust deed. But that aside, we think it clearly appears that the guarantors became insolvent before their obligation to pay the principal of the notes arose, and all interest up to the time of their insolvency appears to have been paid. The guaranty reads:

"For value received, we hereby guarantee the payment of this note, and also the payment of the attached interest coupons as the same fall due, to the holder thereof, without necessity of recourse to the collateral deed of trust or the primary obligor, upon condition that, at our option, we are to be allowed twelve (12) months from date of maturity within which to pay the principal amount but with interest in the meantime at the rate named in this note, should we require this twelve (12) months extension."

Plaintiff's notes matured June 1, 1933, and notes of other holders, of the first series, secured by the trust deed, matured as late as June 1, 1935. It thus appears that payment of the principal of plaintiff's notes could not have been recovered from the guarantors until after June 1, 1934. It may be urged that the acceleration clause in the notes and trust deed matured the entire debt secured, in case of default in the payment of interest, so that action on the guaranty for the principal would then also accrue. First Minneapolis Trust Co. v. Nicollet Syndicate, Inc. 192 Minn. 307, 256 N. W. 240. The answer is that the language of the guaranty is clear and pointed that the guarantors have, at their option, 12 months from the "date of maturity within which to pay the principal amount" of the notes. The interest the guarantors were bound to pay as it fell due. The inference from the guaranty and the allegations of the complaint is that after Lifson's default on the interest defendant secured payment thereof from the guarantors as long as they remained solvent, and until December 1, 1932.

The trust deed provides that the trustee shall not be liable for "default or misconduct of any agent or attorney appointed by it, if such agent or attorney shall have been selected with reasonable care, nor for any errors or mistakes made by it while acting hereunder in good faith, nor for anything whatever in connection with this trust, except wilful misconduct, or gross negligence in the discharge of its duties as such trustee." Considering the fidelity and good faith required of the trustee, we shall assume that plaintiff may under her allegations be able to show that defendant, in bidding in the property, bid so much in excess of its fair market value as to show such misconduct or negligence as to make it liable, provided the complaint is amended so as to charge that the property was of substantially less value than the sum for which it was bid in. It seems to us that that is the only theory upon which plaintiff can prevail for a greater recovery than warranted under the stricken paragraphs. The complaint clearly shows that no damages are recoverable and no cause of action ever accrued because of defendant's neglect to sue on the guaranty or because of any acts of defendant which prevented plaintiff enforcing the guaranty.

If after the suggested amendment of the complaint, as left by the court below, plaintiff shows that she and the other holders of the first series of notes were damaged because of defendant's misconduct in bidding in the property in excess of its fair market value, we think they would also be entitled to recover damages for defendant's mismanagement or misconduct in respect to the property after the redemption expired. Having bid in the property as trustee for the benefit of the first series of note holders, there can be no doubt of its duty to account to them for its management or failure to manage. There is no allegation in the entire complaint going to show that defendant converted the security or *corpus* of the trust to its own use by the foreclosure sale. There can, therefore, be no objection to combining in this one action the damages, if any, sustained by the note holders because of the excessive price at which the property was bid in at the sale, with the damages sustained and recoverable for neglect or mismanagement of the property after the expiration of the redemption period. We are of opinion that the learned court below overlooked the fact that the complaint, after striking the four mentioned paragraphs, did not state any cause of action, but with those four paragraphs in it stated a cause of action for damages which might be capable of being increased by an amendment herein suggested. It likely will turn out that plaintiff's only cause of action, if any at all, will be in the nature of an accounting for the benefit of all the note holders of the first series.

The paragraphs stricken cannot be held irrelevant or immaterial.

The order is reversed.

## ON APPLICATION FOR REARGUMENT.

On October 5, 1934, the following opinion was filed:

*PER CURIAM.*

The petition for a rehearing is denied.

Plaintiff, as appellant, to sustain her claim that the court below erred in striking out the four paragraphs of her complaint as irrelevant and immaterial, which sought to recover damages for defendant's failure to take possession and collect rent after the year of redemption expired from the foreclosure of the trust deed or mort-

gage securing the note of plaintiff and other note holders, had to take the legal position that there had been a valid foreclosure so that title had passed and defendant, as trustee, held it for plaintiff and the other beneficiaries of the trust. So, taking the four paragraphs as relevant and material, we construed the rest of the complaint so as to harmonize therewith. It was not intended to decide any controversy between the parties except as based upon the complaint as it now reads.